ADAM GORDON
United States Attorney
BIANCA CALDERON-PEÑALOZA
Assistant U.S. Attorneys
California Bar No. 324498
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8573
bianca.calderon-penaloza@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

OSCAR VILLALOBOS IRIARTE,

Defendant.

Case No.: 26-MJ-1882-BJW

**UNITED STATES' MOTION TO DETAIN DEFENDANT BASED ON SERIOUS RISK OF FLIGHT AND DANGER TO THE COMMUNITY**

Date: April 9, 2026
Time: 2:00 p.m.
Courtroom: 2D

Hon. Steve B. Chu

The UNITED STATES OF AMERICA, by and through its counsel, Adam Gordon, United States Attorney and Bianca Calderon-Peñaloza, Assistant United States Attorney, hereby respectfully moves to detain Oscar Villalobos Iriarte ("Defendant") based on a serious risk of flight and because the Defendant poses a danger to the community.

**I.**

**STATEMENT OF THE CASE**

On April 2, 2026, a sealed Complaint was filed charging Defendant with two counts, violations of Title 18, United States Code, Sections 922(a)(6) and 922(a)(1)(A), False Statements on ATF Form 4473 and Dealing Firearms Without a License, respectively. Dkt. No. 1. That same day, the Honorable Judge Barbara L. Major signed an arrest warrant (26-MJ-1882) for the Defendant.

On April 6, 2026, the Defendant was arrested and booked into custody.

On April 7, 2026, the Defendant made his initial appearance and the United States moved to detain based on serious risk of flight and danger to the community. Dkt. No. 6. A detention hearing is set for April 10, 2026.

This written motion for detention follows.

## II.

## ARGUMENT

The Bail Reform Act provides for detention where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "On a motion for pretrial detention, the United States bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, or by clear and convincing evidence, that the defendant poses a danger to the community." *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990) (citation omitted).

In this case, a review of the § 3142(g) factors should lead the Court to find that there are no conditions or combination of conditions that will reasonably ensure Defendant's appearance in court in this district or the safety of the community.

The Defendant has been charged with two counts, violations of Title 18, United States Code, Sections 922(a)(6) and 922(a)(1)(A), False Statements on ATF Form 4473 and Dealing Firearms Without a License, respectively. He faces a maximum custodial sentence of 10 years if convicted.

### 1. Nature and Circumstances of the Offense

The nature and circumstances of this offense weigh in favor of detention.

Between June 2016 and March 2026, the Defendant purchased and/or attempted to purchase a total of 25 firearms from gun stores in San Diego. A subsequent investigation by the ATF determined that five of the firearms have been recovered at crime scenes in San Diego, CA and Tijuana, Mexico. Following these recoveries investigators identified text communications between the firearm possessors and the phone number (619) 403-4790

(x4790), which has been attributed to the Defendant.[1] Additionally, multiple firearm possessors saved x4790 as a name related to "Oscar" or "Drifter" (Defendant's known Gang Moniker). Defendant has self-identified as a Sherman gang member. In these text communications, the Defendant offered approximately 17 firearms for sale between December 2024 and September 2025 and included photographs and prices. The precise whereabouts of the remaining firearms and Defendant's cell phone ending in x4790 are presently unknown.

**2. Weight of the Evidence**

The weight of the evidence, although the least important factor, is still a factor the Court must consider. Here it is strong. Firearm purchase records, surveillance video, one firearm seized, and several text communications confirm the Defendant made false statements on an ATF Form and had been engaged as an unlicensed firearms dealer for months.

*A. Girsan 9mm with Serial Number T636825GF01702 Purchased by Defendant is Later Recovered During Search of Sinaloa Cartel Member's Residence*

During the month of September 2025, Defendant initiated and received four firearms from a Federal Firearm Licensee ("FFL"), Turner's Outdoorsman, which included a Girsan 9mm with Serial Number T636825GF01702. In initiating the purchase, the Defendant completed a Form 4473, which warned the Defendant, "…if you are acquiring any of the firearm(s) on behalf of another person," then the Defendant is not the actual buyer or transferee and thus, Turner's could not lawfully sell him the firearms(s). Similarly, the form warned the Defendant that any false oral or written statement or repetitive purchase of firearms for the purpose of resale to earn a profit without a Federal firearms license is a crime punishable as a felony under Federal law.

Nevertheless, the Defendant affirmed he was the actual buyer and purchased the Girsan for $819.98. The Defendant retrieved the Girsan from Turner's on September 17, 2025 at approximately 4:45 p.m. Text communications recovered during the investigation

[1] The Defendant listed x4790 on several of the 4473 Forms during his firearm purchases.

show that only seven minutes later at 4:52 p.m., the Defendant texted Marcial Real (Real) -- an identified Sinaloa Cartel member – a photograph of the Girsan offering to sell the firearm to Real for $1,500. Real counteroffered to purchase the firearm for $1,200 and they appeared to meet up shortly after to complete the purchase.




*Image VILLALOBOS sent to Real on September 17, 2025 at 4:52 p.m. (left) and close-up of the serial number T636825GF01702 displayed in that photograph (right)*

On September 24, 2025, law enforcement officers executed a search warrant at Real's residence regarding a homicide investigation. During the search of the residence, multiple firearms were recovered – including the Girsan the Defendant had purchased and sold Real just days before.[2]

Numerous text messages between the Defendant and Real from June 2025 to September 2024 included similar price quotes for firearms from the Defendant to Real.

*B. Defendant Buys Back .45 Caliber Firearm from Fellow Sherman Gang Member Following Shooting*

Between July 28, 2025 and August 2, 2025, the Defendant offered to sell his fellow Sherman gang member, Francisco Chavarria (Chavarria), no less than four firearms, including handguns and rifle-style firearms. Chavarria is a documented Sherman gang

[2] It should be noted that the firearm associated with the homicide was not recovered during the search and remains outstanding. Additionally, Real fled to Mexico following the search and his whereabouts are currently unknown.

member and his criminal history includes a conviction for attempted murder involving the use of a firearm on August 1, 2016, where Chavarria was sentenced to 10 years' in prison.

On August 2, 2025, National City Police Department (NCPD) Officers responded to a shooting that resulted in a victim suffering from a gunshot wound. Casings recovered from the scene were identified as .45 caliber ammunition. Investigative efforts identified Chavarria as the shooter, and he was arrested. Following a search of Chavarria's cellphone, investigators recovered text messages between the Defendant and Chavarria. The Defendant offered to sell firearms to Chavarria – but more importantly, the Defendant agreed to "buy back" from Chavarria a .45 caliber firearm. Specifically, Chavarria offered to sell the Defendant the "45 and get a new one its a little bit hot" and the Defendant agreed to "buy the 45 back." The reference to the "45" clearly refers to a .45 caliber firearm and the term "hot" in this context refers to a firearm that has been used in a crime.

Following the Defendant's arrest, the Defendant confirmed his affiliation as a Sherman gang member. When asked by investigators how previous firearms he purchased could have ended up in the hands of others, the Defendant stated he had been previously robbed by other individuals during a move – some of whom he believed were members of his own gang. He did not report the alleged robbery. The Defendant was unable to provide details of the type of firearms or the number of firearms he had previously purchased.

This factor favors detention.

**3. History and Characteristics of Defendant**

The history and characteristics known to the United States about Defendant are as follows:[3]

a) Physical and mental condition

The Defendant has no notable physical or mental conditions.

This weighs in favor of bond.

//

[3] The history and characteristics are taken from the Pretrial Services Bail Review Packet and underlying reports in this investigation. At the time of this writing the Pretrial Services Bail Review Packet is not listed on the docket.

b) Family/Community ties

According to the Bail Review Packet of the Defendant prepared by Pretrial Services, the Defendant was raised in San Diego. Per the report, Defendant resides with his parents, sister, wife, and children. Additionally, his wife stated he could return to the residence if released on bond.

It should be noted that despite the Defendant's long-standing ties to the community the Defendant also has significant ties to Mexico. The Defendant is a Legal Permanent Resident and told investigators that he regularly travels to Mexico and stays with his uncle from time to time.

The Defendant is also a self-identified Sherman gang member. The Defendant's tattoos confirm his affiliation and as the above evidence demonstrates, the Defendant has empowered at least one fellow gang associate in carrying out a shooting that resulted in a victim getting shot.







This factor favors detention.

//

//

c) Employment

The Defendant has been employed at his mother's floral business for approximately seven years and could return to continue working.

This weighs in favor of bond.

d) Financial Resources

As noted above, the Defendant earned a salary while employed at his mother's floral business.

This factor weighs in favor of bond.

e) Length of Residence in the Community

As noted above, the Defendant has resided in San Diego for a significant portion of his life.

This factor weighs in favor of bond.

f) Substance Abuse

The Defendant has no notable substance abuse.

This weighs in favor of bond.

g) Criminal History

The Defendant has a prior contact with law enforcement from 2004 for use or under the influence of a controlled substance, violation of promise to appear, and disorderly conduct under the influence of drugs. Diversion was reinstated and completed in December 2008.

This factor weighs in favor of bond.

h) Past Appearances at Court Proceedings

Defendant's past appearances during the pendency of the above case resulted in approximately three failures to appear resulting in bench warrants issued.

This favors detention.

i) On Probation/Parole or Other Release

The Defendant was not on probation, parole, or supervised release at the time of the offense.

This factor weighs in favor of bond.

**4. Nature and Seriousness of the Danger to the Community**

As to nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release, the risk is high. As noted above, the investigation reflects that the Defendant has deceitfully represented to licensed FFL's that he was the actual purchaser of numerous firearms and instead purchased firearms for the express purpose of supplying those firearms to cartel and gang members in the community for a profit. The Defendant's actions have resulted in additional violent crimes.

The nature and circumstances of the offense, the weight of the evidence, the Defendant's gang affiliation, nefarious activity, and lack of compliance with court orders are insufficient to ensure the safety of the community and demonstrate that there are no conditions or reasonable combination of conditions that would ensure the Defendant's appearance at future court proceedings.

## III.

## CONCLUSION

Based on the above, the United States respectfully requests the Court grant the United States' motion and order the Defendant detained.

DATED: April 9, 2026.

Respectfully submitted,

ADAM GORDON
United States Attorney
*s/Bianca Calderon-Peñaloza*
BIANCA CALDERON-PEÑALOZA
Assistant U.S. Attorney